## CHARLES COX *against* JOHN NORTON, who survived GEORGE HANAWALT.

In a suit brought by the administrators of a deceased's estate, to recover the purchase money of land, sold by them in pursuance of an order of the Orphans' Court, one of the heirs of that estate, who had at the bar, upon the trial of the cause, released all his interest in the estate to another of the heirs, is a competent witness for the plaintiffs.

A witness, who swore before arbitrators, that from an entry in his book, which he had then before him, he knew an occurrence had taken place on a certain day, having died before the trial of the cause in court; it is competent to prove what he swore before the arbitrators without the production of the book.

The fact of a paper having been given in evidence before arbitrators, without objection, is no reason why it should be received upon the trial of the cause in court, if it is otherwise illegal.

Writ of error to the Special Court of Mifflin county, (*Reed,* president.)

This was an action of debt upon a bond brought by *John Norton,* who survived *George Hanawalt* against *Charles Cox.* The plaintiff *Norton* and *Hanawalt* were the administrators of *Philip Powell,* deceased, and as such, by an order of the Orphans' Court, sold the real estate of the deceased to *Charles Cox,* the defendant below, and took his bonds for the purchase money, upon one of which this suit was brought.

The only thing to be tried in the cause was the genuineness of a receipt dated 22d October, 1824, alleged to have been given by *George Hanawalt* in his life time, to the defendant, for one thousand one hundred dollars. Many bills of exception were taken to the admission and rejection of evidence, during the course of the trial, only three of which are material to be stated.

The cause had been tried before arbitrators, when the subscribing witness to the receipt testified that the receipt was signed by *George Hanawalt* on the day it bears date, and at a certain place.

(Charles Cox *v.* John Norton, who survived George Hanawalt.)

A witness was then called to prove that on the day the receipt bears date, *George Hanawalt* was at another place. The witness brought his day book before the arbitrators, and having it open before him, he said that from an entry in it, he knew that *George Hanawalt* was in Waynesburg that day. Before the cause was tried in court, that witness died, and the plaintiff offered to prove what he swore before the arbitrators. The witness by whom it was offered to be proved, having been asked whether the witness before the arbitrators spoke of the date, independently of his book, answered, "I can't remember that he undertook to speak of any date independently of his book entry which he opened."

The defendant objected to the evidence on the ground that the book was not produced. The objection was overruled and exception taken by the defendant.

*John Haman,* who had purchased a share of the estate of *Philip Powell,* deceased, executed a release of it at the bar to one of the other heirs, and was offered as a witness; to which the defendant objected, but the testimony was admitted, and exception taken by defendant.

The plaintiff had procured a statement in the hand writing of Mr. *Ralston,* of Philadelphia, of money which the defendant *Cox* had received there. The defendant gave notice to the plaintiff to produce it before the arbitrators; it was there produced and read in evidence without objection. The same paper was produced in court on notice, and the defendant offered it in evidence on the ground that it had been admitted before the arbitrators without objection. The plaintiff objected to it, the court overruled it, and sealed a bill of exceptions at the instance of defendant.

*Alexander* and *Potter,* for plaintiff in error.

The witness before the arbitrators spoke from the entry in his book, it was an essential part of his testimony which we had a right to see; giving evidence of what the witness swore, without the production of the book, was giving parol proof of what was in writing. *Juniata Bank* v. *Brown,* 5 *Serg. & Rawle,* 226.

*John Haman* should not have been permitted to testify; he was one of the heirs of *Powell* for whose use the suit was prosecuting; he had been the party interested—had been engaged for several years preparing for the trial, had all his feelings embarked in it, and *upon the trial,* he transfers his interest in the suit to a *third person,* and does not release to the party in the cause. He being a party in interest, was liable for costs, although not nominally a party, and he could not release himself from that liability.

The paper in the hand writing of Mr. *Ralston,* would have shown where the defendant got the money for which the receipt was given; and having been read in evidence before the arbitrators without objection, and then produced in court by the plaintiff, it was competent evidence.

(Charles Cox *v.* John Norton, who survived George Hanawalt.)

*Blanchard* and *Hale,* for defendant in error, whom the court declined to hear.

The opinion of the court was delivered by

Huston, J.—Of the nine bills of exception to testimony, sealed by the court below, at the instance of the defendants counsel, only three were relied on in this court. The suit was brought by *Norton* and *Hanawalt,* in the lifetime of the latter, to recover the price of a tract of land, sold by them, under an order of the Orphans' Court, as administrators of *Philip Powell,* to the defendant. *John Haman* was entitled to the share of one of the heirs of *Powell,* and having executed a release of his interest to another of the heirs was admitted as a witness. We have in this state admitted the plaintiff in the cause after suit brought; or what is the same thing in substance, a man who contemplates bringing a suit, has been permitted to assign his interest, and be a witness. I have always believed, and experience strengthens this belief, that by so doing, we have not improved the administration of justice. But this is not that case. *J. Haman,* was perhaps, not at all interested in the suit trying. The administrators and their bail were liable to him whether they recovered or not: but he was not at all events a party—not liable for costs, and not effected, except so far as the plaintiff would be less able to pay, if he did not succeed in this suit: for it must be remembered, that the whole matter in dispute was the amount paid by the defendant to the plaintiff: or in other words, whether a receipt produced by the defendant was the receipt of the plaintiff. After the release, *Haman* was a witness within all the decisions in this and other states, made since releases by witnesses were known.

This cause had been tried under our act of assembly before arbitrators, and on that trial, *Anthony Elton* had been examined as a witness; he was now dead; what he swore was proved by a witness in this cause, viz: That on the 22d day of October, 1824, he had *George Hanawalt's* horse in Waynesburg, (the receipt was dated on that day,) that *George Hanawalt,* brought the horse to the shop himself, and that it was in the afternoon of that day. Witness added, Mr. *Elton* brought in his day book, and had it open when he gave his testimony, and said "I cannot say that he relied on his book and not on his memory; I don't remember, and I can't remember that he undertook to speak of any date independently of his book."

The objection to this evidence was, that the book might have been produced in court at the time the witness gave this testimony. If Mr. *Elton* had been alive, and giving testimony, and had said he could fix the time, from an entry in his day book, there might have been some pretence that the other party on their cross examination should have the advantage of seeing the day book and the entries, and the regularity of those entries. Though I do not

(Charles Cox *v.* John Norton, who survived George Hanawalt.)

know that such has been the practice. A witness called to fix a date, often says, he has referred to his books after he had been subpenaed, as to the date of a deed, note or receipt given at the time, and such book or paper is sometimes produced, and sometimes not. That is not this case; here Mr. *Elton* was dead, and what he *said* was to be proved, *not the ground of his belief or why he said so.* The witness might not know the writing of Mr. *Elton;* might have never seen the inside of this book; not know it again if produced. All that he offered to do, was to prove in court what Mr. *Elton* had sworn, that he undertook to do, and was permitted to do, and there is no error in receiving the testimony.

After very much testimony *pro* and *con* had been given as to this receipt, (which was dated 22d October, 1824, and for eleven hundred dollars.) The plaintiff called a witness who stated, and no objection taken to it, " *Cox* stated he had got the money in Philadelphia, and had lent it to Mr. *Hammond* or Mr. *Lusk;* that he had it at the bank, and had borrowed some from a man in Millerstown; he said that was the money he paid to *Hanawalt.*" A third person had procured in Philadelphia a statement from *R. Ralston,* of payments made to the defendant, on account of a legacy, viz: in March 1823; five hundred dollars, in June 1823, nine hundred and twenty-five dollars, and had given this to the plaintiff's attorney. When the cause was before arbitrators, the defendant's counsel had asked the plantiff's for this paper, after stating that he had no right to it, he however gave the paper and it was shown to the arbitrators. After the appeal, viz: at the trial in court, the defendant called for this paper; plaintiff's counsel said he had it, but would submit to the court whether it was evidence, and handed it to the court, who after looking at it, gave it back, and decided it was not evidence, and clearly it was not; it was in three lines having no reference to this or any other cause; a mere short memorandum, not sworn to, nor even certified to be correct; but it was argued here, that having been before the arbitrators, that made it evidence on the appeal. If whatever is admitted by arbitrators, produced and not objected to before arbitrators, is to be evidence on the appeal, it will make a great alteration in the rules of evidence in our courts, or rather we will have a different set of rules in every case of appeal. When ever an account is admitted to be due, or a paper to be genuine, before arbitrators, perhaps, the proof of this may generally be evidence in court. The admission or confession of the party is almost always evidence, no matter where it was made. This is not that case. Arbitrators under our act of assembly, are the judges of what is admissible as evidence, as well as of the weight and effect of that evidence; no bill of exception to testimony is taken before them, the only redress from any and every error of theirs is the appeal to court, and this appeal is given as much for the purpose, that the last solemn final decision

(Charles Cox, *v.* John Norton, who survived George Hanawalt.)

of the cause may be had on legal testimony, and nothing but legal testimony, as for any other purpose. Much is heard by the arbitrators which ought not to go before them, to contend about the admissibility of evidence before men unacquainted with the rules of evidence, and the principles on which they are founded, is irksome, useless sometimes, and not seldom injurious to the client; if the cause is decided erroneously, the party appeals, and the counsel know, and must know that in court on the appeal, no other evidence will or can be received, except what ought and would have been received, if it never had been before arbitrators. The confessions or admissions of a party are generally evidence against him, no matter when they are made, but paper statements, parol or hearsay evidence from third persons, or by witnesses, are to be decided on by fixed and settled principles.

It was said, however, that the party here was surprised; that if he had not believed this paper would be produced, and read without objection, he would have taken the deposition of *R. Ralston;* but he had no right to believe any such thing; it is a first attempt to alter the law in this respect, and the alteration attempted is too pregnant with evil, to receive any sanction from this court. That *Ralston* paid defendant five hundred dollars, and nine hundred dollars, at the periods of eighteen and fifteen months before the date of this receipt, was very weak evidence, if evidence at all, of the payment claimed by the defendant. If a man could get clear of a debt by proving that he had once the means of paying it, we should have a new chapter of evidence, and new principles of decision; and the debts of those who are rich, or who are in a business by which much money passes through their hands, would be easily paid; in general such proof would not be admissible. But it is said in this case the plaintiffs themselves had given some evidence on this subject, and had introduced it. But now the plaintiff seems to have admitted the fact, that he got money in Philadelphia; but they had proved that the defendant said he had lent that money. The man to whom he said he had lent it (Mr. *Hammond,*) was in court, a witness in the cause; he could tell whether he ever had it, or repaid it, Millerstown was in the adjoining county; the man from whom he got the money there was not offered; the bank was in town, its officers or books were not resorted to; there was no attempt to give the only material evidence on this point; (I do not say it was evidence unless plaintiff had proved something which made it so,) nor of giving evidence directly bearing on what plaintiff had proved; it is a sheer attempt to subject the Common Pleas to the rules and practices, and irregularity of trials before arbitrators. The court below were right on this point also.

Judgment affirmed.